IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 11, 2005 Session

## STATE OF TENNESSEE v. CHARLES MICHAEL HALL

Direct Appeal from the Circuit Court for Henry County
No. 13659     Julian P. Guinn, Judge

No. W2004-01165-CCA-R3-CD  - Filed April 13, 2005

A jury convicted the defendant, Charles Michael Hall, for a third offense of driving under the influence of an intoxicant (D.U.I.), a Class A misdemeanor, and for driving after having been declared a habitual motor vehicle offender, a Class E felony.  For the D.U.I. conviction, he received a sentence of eleven months and twenty-nine days in the county jail with a release eligibility at 75% and a $1500 fine.  For the habitual motor vehicle offender offense, he received a sentence of one year as a Range I standard offender to be served in the Department of Correction.  The sentences are to be served consecutively.  In this appeal as of right, the defendant argues: (1) the evidence is insufficient to sustain his convictions; (2) the trial court improperly denied charging a proposed jury instruction; and (3) the trial court improperly charged the jury.  After reviewing the matter, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

Paul D. Hessing, Paris, Tennessee, for the appellant, Charles Michael Hall.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Robert Radford, District Attorney General; and Steven L. Garrett, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Facts and Procedural Background

The following proof was presented at the defendant's trial.  Officer James Forrest of the Henry County Sheriff's Department testified that at roughly 8:18 p.m., on August 14, 2003, while on patrol on Cypress Road in Henry County, Tennessee, he "came up on a vehicle sideways in the road and up against a telephone pole."  The defendant was outside the vehicle flagging down traffic.

Officer Forrest noticed a car driving away from the scene, but otherwise, no one else was at the scene other than the defendant. As Officer Forrest approached, the defendant "just started to walk off." Upon asking the defendant what had happened, the defendant told Officer Forrest "two or three different stories, but nothing really made sense."

The defendant told Officer Forrest that the driver of the wrecked vehicle left in the car that Officer Forrest had previously observed driving away from the scene. However, after speaking further with the defendant, Officer Forrest determined that the defendant had driven and wrecked the vehicle. Although Officer Forrest did not observe any alcohol inside or around the vehicle, he testified that he smelled a "very strong odor of alcohol coming from [the defendant's] breath." After administering several field sobriety tests, Officer Forrest determined the defendant to be intoxicated and arrested him for D.U.I.

After Officer Forrest arrested the defendant, Tennessee Highway Patrol Trooper Monte Belew and David Brown, the owner of the vehicle that had collided with the telephone pole, arrived at the scene. Officer Forrest testified that, on the way to the accident, he had seen Brown in the parking lot of B&D's Grocery, which was approximately "three-quarters of a mile to a mile" from the scene of the accident.

On cross-examination, Officer Forrest admitted that he had not seen the defendant operate the vehicle, had not seen the defendant inside the vehicle, and had no knowledge as to the location of the ignition key at the time of arrest. Officer Forrest also acknowledged that he did not know whether the vehicle was operable or how long it had been there at the time he arrived.

Trooper Belew testified that the defendant "obviously was intoxicated. No two ways about that." He indicated that the vehicle was resting against a utility pole in a ditch, but had only minor damage. Trooper Belew stated, "[t]he owner of the truck [Brown] had a slight odor of alcohol about him, so I told him that he could not drive the vehicle home." However, Trooper Belew stated that, based upon his investigation, he believed that Brown was not the driver who wrecked the vehicle.

On cross-examination, Trooper Belew admitted that he did not see the defendant operate the vehicle and that he had no knowledge as to the location of the ignition key. Although Trooper Belew could not testify as to exactly how long the vehicle had been in the ditch, he thought it to be a "short time." He stated that B&D's Grocery was "probably about three- to four-tenths of a mile" from the scene of the accident.

At the conclusion of the State's proof, the defendant moved for judgment of acquittal, arguing that "the only evidence that's been proffered is that [the defendant] was standing next to this vehicle when Officer Forrest arrived." The State argued:

> We've elicited testimony from the officer that there was nobody else around when the officer came on the scene and that there were no other occupants or, apparently, no other occupants of the car; therefore, the reasonable inference being

that the Defendant drove the truck and wrecked it. Admittedly, it's circumstantial evidence, but we feel like that it's sufficient to go to the jury as a fact question.

The trial court summarily overruled the defendant's motion.

The defense declined to put on any proof at the hearing, but requested that the trial court charge the jury with two special jury instructions. The first requested instruction was based upon the factors set forth in State v. Lawrence, 849 S.W.2d 761, 765 (Tenn. 1993). The trial judge accepted this jury instruction and charged the jury as follows:

> In this case, there is an issue as to whether the Defendant was in physical control of a vehicle. To decide if the Defendant was in actual physical control of the vehicle, relevant factors and circumstances you should consider include: one, the location of the Defendant in relation to the vehicle; two, the whereabouts of the ignition key; three, whether the motor was running; four, whether the Defendant, but for his intoxication, could direct the use or non-use of the vehicle; and five, the extent to which the vehicle itself was capable of being operated or moved under its own power.

The trial court also instructed the jury on Tennessee Pattern Jury Instruction 38.06, relating to physical control:

> For a person to be in physical control of a motor vehicle, that person must be present at or near a motor vehicle and must have the ability to determine whether or not such motor vehicle is moved and, if so, to where it is moved. It is not necessary that the motor of a motor vehicle be running or capable of starting for a person to be in physical control of such vehicle. A person may be in physical control of a motor vehicle without driving, starting or moving the motor vehicle.

The trial court declined to charge the defendant's second requested jury instruction. A copy of this jury instruction is not included in the record, however defense counsel stated that it "takes into account the extent to which the vehicle itself is capable of being operated or moved under its own power."

The jury found the defendant guilty of D.U.I. and violating the Habitual Motor Vehicle Offenders Act. The defendant then filed a motion for new trial. He argued that the verdict was contrary to the evidence, that the trial court improperly denied his request to sever the offenses, that the jury heard testimony over an objection, and that the trial judge improperly charged the jury. The State argued:

> All the [jury] had to determine was that the Defendant was driving the car subsequent to being declared a habitual motor offender and, of course, there was testimony

indicating that the Defendant was under the influence and driving the car when it wrecked, albeit circumstantial evidence, and/or was in control of the car.

The trial court denied the motion and conducted a sentencing hearing. For the D.U.I., the defendant received eleven months and twenty-nine days in the county jail with a release eligibility at 75% and a $1500 fine. For the habitual motor vehicle offender offense, the defendant received one year as a Range I standard offender in the Department of Correction. The trial court ordered the sentences to run consecutively. The defendant now appeals to this Court.

## II. Analysis

### Sufficiency of the Evidence

In his first issue, the defendant contends that the evidence is insufficient to support his convictions for D.U.I. and violation of the Habitual Motor Vehicle Offenders Act. The State responds that there is sufficient circumstantial evidence to support the defendant's convictions.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the [State], any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are to be resolved by the trier of fact. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This Court will not disturb a verdict of guilt unless the evidence clearly preponderates against the verdict and in favor of the innocence of the accused. Id. A jury conviction removes a defendant's presumption of innocence and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

These rules apply to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. See State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). However, a conviction may be based entirely upon circumstantial evidence. Duchac v. State, 505 S.W.2d 237, 241 (Tenn. 1973). In such cases, the facts and circumstances must be "so closely interwoven and connected that the finger of guilt is pointed unerringly at the defendant and the defendant alone." State v. Crawford, 470 S.W.2d 610, 613 (Tenn. 1971). As in the case of direct evidence, the weight to be afforded circumstantial evidence and the inferences to be drawn from such evidence are questions primarily for the jury. Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958).

### A. Driving Under the Influence of an Intoxicant

First, we must consider whether the State proved the defendant's guilt for D.U.I. beyond a reasonable doubt. Tennessee Code Annotated section 55-10-401 (2003) provides, "It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state . . . while under the influence of any intoxicant." Thus, the State may prove this offense by showing that the defendant was driving *or* in physical control of a vehicle while intoxicated. See Lawrence, 849 S.W.2d at 763. The State argues that the circumstantial evidence in this case supports a finding of guilt under either theory. Viewing the evidence in the light most favorable to the State, we agree that the evidence supports the defendant's conviction for driving under the influence under either theory.

Initially, the defendant argues that the State failed to prove that he operated or was in physical control of the vehicle. In Lawrence, our supreme court analyzed what activity constituted being in physical control of a vehicle and applied a totality of the circumstances approach:

> [T]he test allows the trier of fact to take into account *all* circumstances, i.e., the location of the defendant in relation to the vehicle, the whereabouts of the ignition key, whether the motor was running, the defendant's ability, but for his intoxication, to direct the use or non-use of the vehicle, or the extent to which the vehicle itself is capable of being operated or moved under its own power or otherwise.

Id. at 765. These same factors "can be used as circumstantial evidence that the defendant had been *driving* the vehicle." Id. Driving under the influence is a continuing offense and can be established by circumstantial evidence. State v. Ford, 725 S.W.2d 689, 690-91 (Tenn. Crim. App. 1986).

Our supreme court applied the Lawrence test in State v. Butler, 108 S.W.3d 845, 849 (Tenn. 2003), and found that the evidence was sufficient to support a conviction based upon either the theory that the defendant was driving or that he was in physical control while intoxicated. In Butler, the court viewed the totality of the circumstances to uphold the D.U.I. conviction of a defendant who was found approximately 100 yards from his motorcycle. Id. at 845.

In the instant case, the trial judge charged the jury with an instruction to consider the factors stated in Lawrence. The defendant was found in close proximity to the vehicle, and he does not contest his intoxication at the time. Officer Forrest testified to seeing the owner of the vehicle "approximately three-quarters of a mile to a mile" from the scene. Trooper Belew stated his conclusion that the owner was not the driver of the vehicle. The jury accredited this evidence, and the defendant presented no proof at trial. As previously stated, the Lawrence factors can be used as proof that the defendant was actually driving. Thus, we conclude that a rational trier of fact could have found the evidence sufficient to convict the defendant under either the theory that he drove or exercised physical control over the vehicle while intoxicated. This issue is without merit.

**B. Violation of the Motor Vehicle Habitual Offenders Act**

Next, the defendant argues that the evidence is insufficient to establish his guilt beyond a reasonable doubt for the offense of driving a motor vehicle after having been declared a habitual motor vehicle offender. The defendant cites State v. Roger David Browder, No. 02C01-9606-GS-00201, 1998 WL 47877 (Tenn. Crim. App., at Jackson, Feb. 9, 1998), perm app. denied (Tenn. Oct. 19, 1998), to argue that his conviction must be reversed because the State failed to prove that he drove the vehicle.

The statute underlying the defendant's conviction states, "it is unlawful for any person to *operate* any motor vehicle in [Tennessee] while the judgment or order of the court prohibiting the operation remains in effect." Tenn. Code Ann. § 55-10-616(a) (2003) (emphasis added). Unlike the statute governing D.U.I., the plain language of this statute does not indicate that mere physical control can yield conviction.

In Browder, this Court determined that the evidence was sufficient to sustain the defendant's D.U.I. conviction, but insufficient to sustain the defendant's conviction for driving on a revoked license. 1998 WL 47877, at *1. As a result, the defendant's D.U.I. conviction was affirmed, but the driving on a revoked license offense was reversed. Id. In Browder, the vehicle, or motorcycle, was parked in a parking lot near a liquor store. Id. Though the jury could infer the defendant's physical control over the motorcycle, no evidence revealed how long the motorcycle had been parked. Id. In the instant case, the jury accredited Trooper Belew's testimony that the vehicle had been in the ditch a "short time." As stated, a rational trier of fact could view the circumstantial evidence in this case to conclude beyond a reasonable doubt that the defendant drove or operated the vehicle on the night of the offense. Therefore, this issue is without merit.

## Denial of the Defendant's Requested Jury Instruction

The defendant next argues that the trial judge improperly denied his request to charge the jury with his proffered "Special Jury Instruction Request Number Two regarding 'inoperable motor vehicles.'" The record indicates that the defendant's second jury instruction request "takes into account the extent to which the vehicle itself is capable of being operated or moved under its own power." However, the defendant has failed to include copies of the proffered jury instructions in the record for appeal. Without this jury instruction, it is impossible for this Court to determine if the trial court erred. Absent the precise language of the jury instruction, this Court cannot tell whether the jury instruction, as phrased, was an accurate statement of law. See, e.g., State v. David Lee Bellamy, No. 03C01-9612-CR-00476, 1998 WL 88426, at *5 (Tenn. Crim. App., at Knoxville, March 3, 1998) (holding that a proffered jury instruction on inoperable motor vehicles was an incorrect statement of the law). It is the defendant's responsibility, as appellant, to provide a complete record of the issues for our review. See State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988); Tenn. R. App. P. 24(b). Failure to effectuate a complete record adequate for us to review the issue results in waiver of the issue. See Roberts, 755 S.W.2d at 836. Consequently, the record is inadequate to review this issue.

## The Jury Instructions on Physical Control

The defendant's final argument is that trial court failed to properly instruct and thereby confused the jury on the issue of physical control. In this case, the trial court charged the jury with both the pattern jury instruction and with the defendant's request based upon Lawrence. This Court has previously reviewed this issue and determined: "the pattern instruction supplemented by a totality-of-the-circumstances charge . . . is undoubtedly a correct exposition of the law." State v. Johnny Wade Meeks, No. 03C01-9811-CR-00411, 1999 WL 1084230, at *5 (Tenn. Crim. App., at Knoxville, Dec. 3, 1999); see also State v. Charles R. Brown, No. 03C01-9806-CC-00213, 1999 WL 446565, at *4 (Tenn. Crim. App., at Knoxville, June 2, 1999) (holding that a trial court's charge of both the Lawrence factors and the pattern jury instruction was a correct statement of the law). Accordingly, this issue is without merit.

### III.  Conclusion

In consideration of the record and the foregoing reasoning, we affirm the judgment of the trial court.

_____
J.C. McLIN, JUDGE