# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 10, 2012

## STATE OF TENNESSEE v. GARY L. GRAHAM

**Direct Appeal from the Circuit Court for Fayette County**
**No. 6406     J. Weber McCraw, Judge**

**No. W2011-00103-CCA-R3-CD  - Filed May 10, 2012**

The defendant, Gary L. Graham, was convicted by a Fayette County Circuit Court jury of driving under the influence ("DUI"), and the court found the defendant guilty of DUI third offense and violation of the implied consent law. The court merged the DUI convictions and sentenced the defendant to eleven months and twenty-nine days, suspended to misdemeanor probation upon service of 145 days at 75% in the county jail, and suspended the defendant's driver's license for two years as a result of his violation of the implied consent law. On appeal, the defendant challenges the sufficiency of the evidence convicting him of DUI. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Matthew R. Armour, Somerville, Tennessee, for the appellant, Gary L. Graham.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; D. Michael Dunavant, District Attorney General; and Matt Hooper, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The defendant was indicted on charges of DUI, DUI third offense, and violation of the implied consent law, after the police received a call that there was a suspicious vehicle in the drive-through lane of the McDonald's restaurant in Oakland and discovered the defendant passed out in his truck.

**State's Proof**

At trial, Sergeant Kenneth Long with the Oakland Police Department testified that he responded to the McDonald's restaurant on September 19, 2009, at approximately 2:15 a.m. after receiving a call that there was a suspicious vehicle in the drive-through lane of the restaurant. When Sergeant Long arrived at the restaurant, he observed a gold-colored truck parked in the drive-through lane, approximately halfway between the speaker device in the back where one would order food and the pickup window located near the front of the restaurant. A man, identified as the defendant, was "asleep, slumped over towards the [steering] wheel" when Sergeant Long approached, and the engine of the truck was running.

Sergeant Long testified that his first concern was for the defendant's safety, as he did not know whether the defendant was possibly suffering from a diabetic coma or other medical problem. Sergeant Long approached the driver's side of the truck and attempted, for fifteen to twenty seconds, to arouse the defendant by calling for him to wake up. When the defendant did not wake up, Sergeant Long reached in the open window and jostled the defendant on the shoulder to wake him. The defendant awoke and indicated that he was all right. Sergeant Long noticed an odor of alcohol emanating from the defendant as he spoke, and the defendant seemed "[a] little detached from what was going on." The defendant admitted that he had been drinking at the Ozone, a bar in Oakland, prior to driving, but he did not indicate how much he had to drink. The defendant told Sergeant Long that he "d[id]n't want to be in any trouble."

After speaking to the defendant for three or four minutes, Sergeant Long suspected that the defendant was intoxicated and asked him to step out of his truck to perform some field sobriety tests. The defendant appeared to be unsteady on his feet as if he had to process his movements, and the unsteadiness did not improve as it would with someone who was waking up. The defendant's speech was "slow and staggered." Sergeant Long also noted that the odor of an intoxicant became stronger when the defendant exited the truck.

Sergeant Long testified that he had the defendant perform the nine-step walk-and-turn test and one-leg stand test. With regard to the walk-and-turn test, the defendant was "unsteady" when Sergeant Long explained the test and then performed the task poorly. The defendant started the test too soon, stepped off the line during the first five steps, and then failed to walk heel-to-toe the remaining four steps. Instead of pivoting and taking nine return steps in the heel-to-toe manner, the defendant made a "U-turn" and took fourteen strides, off the line, back to the starting position. With regard to the one-leg stand test, the defendant lowered his foot four times and swayed and used his arms to balance himself. The defendant lowered his foot for the last time at count fifteen, of thirty, and refused to continue performing the test or perform any other test. The defendant did not complain of having any

medical conditions that would hinder him from performing the tests.

Sergeant Long testified that, based on his observations of the defendant, he made the determination that the defendant was under the influence and too impaired to drive. The defendant was subsequently placed under arrest and transported to the Oakland Police Department. While waiting for a tow truck to pick up the defendant's vehicle, Sergeant Long read the defendant the implied consent form. The defendant was initially uncertain whether to submit to a blood alcohol test but ultimately refused to submit to a test. No alcohol was found in the defendant's truck.

On cross-examination, Sergeant Long acknowledged that he only had approximately two years experience as a police officer prior to the stop in this case. Sergeant Long also acknowledged that he had never given field sobriety tests to someone who was able to perform them in a good manner. He admitted that neither he nor any of the other officers observed the defendant driving on the road.

Sergeant Samuel Klein with the Oakland Police Department testified that he responded to the call at McDonald's and observed the defendant slumped over the steering wheel of his truck. Because two other officers were already tending to the defendant, Sergeant Klein went and spoke to the manager who had called about the defendant's vehicle.[1] While talking to the manager, Sergeant Klein periodically turned to look at the defendant and recalled that the defendant was "swaying and staggering" when he stepped out of his truck. Sergeant Klein never spoke to the defendant and only observed a few glimpses of the walk-and-turn test. Based on his limited observations of the defendant, Sergeant Klein believed that the defendant's behavior was more consistent with someone who was intoxicated than someone who was sleepy, and he believed it was possible that the defendant was intoxicated.

**Defendant's Proof**

The defendant testified that he had gone to the Ozone bar to have dinner with friends on the evening of September 19. He could not recall how long he was at dinner that evening but speculated it could have been from as early as 6:00 p.m. to as late as 10:00 p.m. The defendant admitted that he had "two or three" drinks over the course of dinner. After leaving the bar, the defendant went home but did not go to sleep or have anything to drink. Around 2:00 a.m., he decided to go to McDonald's. He ordered some food in the drive-through lane but fell asleep as he was waiting to reach the pickup window. He explained

---

[1] The McDonald's manager who contacted the authorities was unavailable for trial because she had undergone an appendectomy, was unable to walk, and on pain medication.

that he was tired from working seven days a week. The defendant denied that he passed out due to intoxication and testified that he had driven to McDonald's without any trouble.

The defendant testified that, after the officers woke him, he performed three field sobriety tests. He said that the officer neglected to mention that he performed the ABC test and, in fact, recited his alphabet three times. The defendant acknowledged that he stopped during the one-leg stand test and that he took strides during the walk-and-turn test. He explained that he was involved in a car accident in 1979, which caused him to lose his equilibrium, and that he sometimes lost his balance when walking. He stated that he did not completely understand the purpose of the implied consent form but ultimately signed saying that he refused to take the blood alcohol content test.

## Rebuttal Proof

Sergeant Long testified that he had seen the defendant since the incident and had never noticed him having trouble walking other than on the night in question.

Following the conclusion of the proof, the jury found the defendant guilty of DUI, and he waived jury determination of third offense status. The court then found the defendant guilty of DUI third offense and violation of the implied consent law.

## ANALYSIS

On appeal, the defendant challenges the sufficiency of the evidence convicting him of DUI, arguing that the State failed to prove that he was impaired and that no officer witnessed him operate his vehicle. When the sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our

-4-

supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The jury convicted the defendant of driving under the influence as forth in Tennessee Code Annotated section 55-10-401 as follows:

> (a) It is unlawful for any person to drive or be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:
>
>> (1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system[.]"

Tenn. Code Ann. § 55-10-401(a)(1) (2006). In order to determine if a defendant was in physical control of a vehicle for DUI purposes, the trier of fact looks to the totality of the circumstances. See State v. Butler, 108 S.W.3d 845, 850 (Tenn. 2003) (citing State v. Lawrence, 849 S.W.2d 761, 765 (Tenn. 1993)). As with any crime, DUI can be established by circumstantial evidence. Lawrence, 849 S.W.2d at 764 (quoting State v. Ford, 725 S.W.2d 689, 691 (Tenn. Crim. App. 1986)).

In the light most favorable to the State, the evidence was sufficient for a rational trier of fact to find that the defendant drove or was in physical control of a vehicle while under

the influence. The proof at trial shows that the defendant was found passed out, slumped over behind the steering wheel of his truck, with the engine running, in the McDonald's drive-through lane. When officers were unable to verbally rouse the defendant, Sergeant Long reached through the truck's window and jostled him awake. When questioned by Sergeant Long, the defendant smelled of alcohol and his speech was slow and staggered. Sergeants Long and Klein both observed that the defendant was unsteady on his feet as he stepped out of his truck. The defendant subsequently performed poorly on two field sobriety tests, and he admitted to having two or three drinks earlier in the evening. Based on the combination of his observations, Sergeant Long formed the opinion that the defendant was intoxicated. It was the prerogative of the jury to discredit the defendant's explanations for the lack of ability to balance and slow and staggered speech he displayed the morning of the incident, as well as for the peculiar situation of being found asleep in the McDonald's drive-through lane. The defendant is not entitled to relief.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE

-6-